## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **PARKVIEW ADVENTIST** | ) | |
| **MEDICAL CENTER,** | ) | |
| | ) | |
| **Appellant,** | ) | |
| | ) | |
| v. | ) | **2:15-cv-00320-JDL** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Appellee.** | ) | |

## ORDER ON APPEAL OF BANKRUPTCY COURT'S ORDER DENYING DEBTOR'S MOTION TO COMPEL POST-PETITION PERFORMANCE OF EXECUTORY CONTRACT

This matter comes before the court on Parkview Adventist Medical Center's appeal taken from the Bankruptcy Court's denial of the Debtor's motion to compel the post-petition performance of an executory contract. For the reasons discussed below, I affirm the decision of the Bankruptcy Court.

## I. BACKGROUND

Parkview Adventist Medical Center ("Parkview"), a hospital located in Brunswick, Maine, filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C.A. § 101 *et seq.* (2016), on June 16, 2015. ECF No. 13 at 8, 11.[1] In a letter dated June 15, 2015 ("Notification Letter"), Parkview informed the Centers for Medicare & Medicaid Services ("CMS"), with which it had a Provider Agreement to provide services and receive payment under the federal Medicare program, that it would close as an inpatient hospital but

---

[1] The ECF references, unless otherwise indicated, correspond to the appeal docket before the District Court in case number 2:15-cv-00320-JDL. References to filings in the Bankruptcy Court specify that case number along with the ECF number.

would continue to provide outpatient services.  *Id.* at 8, 10-11.  Specifically, the letter

stated in part:

> This letter serves as notice of termination of participation in the
> Medicare Program, as required by 42 C.F.R. § 489.52.
>
> [Parkview] will file a voluntary petition for relief under Chapter 11 of
> the United States Bankruptcy Code on June 16, 2015.  This letter serves
> as notice that Parkview is closing as a hospital effective upon the order
> of the Bankruptcy Court and will no longer participate in the Medicare
> Program (Title XVIII of the Social Security Act) as an acute care hospital
> provider.  Parkview expects the Bankruptcy Court to enter its order
> within sixty (60) to ninety (90) days of the date of this letter.
>
> Subject to the approval of the Bankruptcy Court, Parkview will begin to
> transition acute care services to Mid Coast Hospital beginning June 18,
> 2015.  Parkview will continue to provide outpatient services[.]

Appellant App. at 110.

CMS' response came in a letter dated June 19, 2015 ("Termination Letter").

CMS indicated that it found the termination effective as of June 18, 2015, and that

Parkview no longer qualified as a "hospital" for purposes of Medicare:

> In a correspondence dated June 15, 2015, [Parkview] notified [CMS] of
> its intent to voluntarily terminate its Medicare provider agreement with
> the Secretary of Health and Human Services but did not provide a date
> for the voluntary termination.   Based upon information from your
> hospital's website, your statements to CMS, and your emergency motion
> filed in the District of Maine bankruptcy case 15-20442, CMS has
> determined that the date of voluntary termination of your Part A
> Medicare Provider Agreement is June 18, 2015.   *See* 42 C.F.R. §
> 489.52(b)(1).
>
> According to the information reviewed by CMS, the hospital has closed
> its inpatient care services on June 18, 2015, and discharged all
> inpatients on or about 4:00pm on June 18, 2015.   Additionally, the
> hospital is not accepting new inpatients, and does not plan to accept new
> inpatients in the future.   Therefore, the hospital no longer meets the
> definition of "hospital," as outlined in Section §1861(e) of the Social
> Security Act. *See also* 42 C.F.R. § 482.1.  More specifically, a Medicare-
> participating hospital must be an institution which is primarily engaged

in providing care to inpatients.  Additionally, you have also requested voluntary termination of your participation in the Medicare program.

Therefore, under the provisions of Federal regulations at 42 C.F.R. §489.52(b)(1, 3), your Part A Medicare Provider Agreement with the Secretary of Health and Human Services is terminated, effective June 18, 2015.  No payment under this agreement can be made under the Medicare program for services rendered on or after June 18, 2015.

*Id*. at 112.

Also on June 19, 2015, the State of Maine, Department of Health and Human Services issued a Conditional License to Parkview authorizing it to operate a 55-bed acute care facility through December 19, 2015.  ECF No. 13 at 11.  On June 24, Parkview informed CMS that it was not terminating the Provider Agreement and that CMS' decision to terminate the agreement would adversely affect Parkview's bankruptcy transition plan.  *Id*. at 11, 41; ECF No. 14 at 13.  On June 25, CMS responded that it was willing to rescind the termination if Parkview resumed its inpatient admissions.  ECF No. 13 at 11, 41; ECF No. 14 at 13-14.  Parkview later sought, on July 27, to rescind its June 15 notice of voluntary termination.  ECF No. 13 at 41.[2]

Parkview's motion to compel the post-petition performance of an executory contract ("Motion to Compel") asserted that because the Provider Agreement is an executory contract, it is property of the debtor's estate and, therefore, pursuant to 28 U.S.C. § 1334(e),[3] the Bankruptcy Court has exclusive jurisdiction over the Provider

---

[2]  I note that some of these facts come from the January 7, 2016, decision of the Administrative Law Judge (ECF No. 13 at 39-47) in the administrative appeal, discussed *infra*, and that the July 27, 2015, communication was subsequent to the July 9, 2015, filing of Parkview's motion, the denial of which Parkview appeals in this case.

[3]  Subsection 1334(e) states in part:

Agreement as property of the estate.  Case No. 15-20442 (Bankr. D. Me.), ECF No. 144; Appellant App. at 41-43, ¶¶ 12-16.  Parkview further asserted that the doctrine of exhaustion of administrative remedies does not apply to its motion because the motion alleges violations of the Bankruptcy Code, §§ 362, 365, and 525, and not violations of the Medicare Act.  Appellant App. at 43, ¶ 17.  The motion requested that the Bankruptcy Court issue an order determining that CMS' "Termination Notice" is null and void and that the Provider Agreement remains in effect.  *Id.* at 56. In addition, Parkview asked the court to require CMS to honor the terms of the Provider Agreement, until assumed or rejected by Parkview, and to reimburse Parkview for Part B Medicare services provided from and after June 18, 2015.  *Id.*

In opposition, CMS contended that 42 U.S.C. §§ 405(g) and (h), made applicable to the Medicare Act by 42 U.S.C. §§ 1395ff(b)(1)(A) and 1395ii, respectively, allow judicial review for a claim arising under the Medicare statute only after presentment of the claim to the Secretary of Health and Human Services and exhaustion of administrative remedies.  Case No. 15-20442 (Bankr. D. Me.), ECF No. 166; Appellant App. at 85-86, ¶¶ 14-15.  Therefore, CMS advanced, the Bankruptcy Court lacked jurisdiction to hear and adjudicate Parkview's motion and could not reinstate the Provider Agreement.  Appellant App. at 87, ¶ 17.

---

(e) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction--

(1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate[.]

28 U.S.C.A. § 1334(e)(1) (2016).

4

CMS also argued that, assuming the Bankruptcy Court had jurisdiction, CMS' acceptance of Parkview's request to voluntarily terminate the Provider Agreement did not violate 11 U.S.C. §§ 362, 365, or 525, and that Parkview rejected the Provider Agreement with its voluntary termination request.  *Id.* at 83, 96, ¶¶ 6, 37.  CMS asserted that by its June 19 Termination Letter, CMS "accepted Parkview's June 15, 2015, voluntary termination for its Hospital Medicare Provider Agreement[,]" and that by discharging all inpatients and ceasing to accept new inpatients, Parkview no longer met the definition of "hospital" under Section 1861(e) of the Social Security Act[4] and 42 C.F.R. § 482.1, as of June 18, 2015.  *Id.* at 82-83, ¶¶ 4-5.  Because Parkview failed to specify a date of termination in the Notification Letter, CMS contended, CMS was required to do so.  *Id.* at 82, ¶ 4.  CMS chose June 18, 2015, because as of that date Parkview had closed its inpatient care services, discharged all inpatients, and stopped accepting new inpatients, and the State of Maine had prohibited Parkview from admitting inpatients without prior approval.  *Id.* at 82-83, 97, ¶¶ 4, 40.

CMS further posited that because Parkview's Notification Letter of June 15 preceded the bankruptcy petition of June 16, the termination took place pre-petition.[5]  *Id.* at 96-97, ¶ 38.

---

[4]  CMS refers to Social Security Act, § 1861, in a number of places.  The Medicare Act is codified at Title XVIII of the Social Security Act, § 1801 *et seq.*, as amended, 42 U.S.C.A. § 1395 *et seq.* (2016).

[5]  As Parkview stated at the hearing on the appeal and in its brief (ECF No. 13 at 9), CMS stated in its objection to Parkview's Motion to Compel that it "agrees with Parkview's assertion that the provider agreement is properly treated as an executory contract in bankruptcy."  Appellant App. at 86, ¶ 16. CMS contends that while provider agreements may be treated as executory contracts in bankruptcy, here, the Provider Agreement is not an executory contract within the meaning of § 365 and is not

On July 24, 2015, the Bankruptcy Court issued an oral order denying Parkview's Motion to Compel. *See* Case No. 15-20442 (Bankr. D. Me.), ECF No. 200; Appellant App. at 203; Appellant App. at 197-202 (Transcript of Hr'g, July 24, 2015). The court explained:

> Based on the pre and post-petition actions of the Debtor, CMS has determined that Parkview is not a hospital under the Medicare Act and Regulations. And thus is not entitled to receive reimbursements for certain Medicare services. Parkview asserts that it provided as a hospital and is entitled to be compensated for pursuant to the provider agreements. And those are services rendered since June 18, 2015. Parkview seeks to compel payment for those services. I conclude that I do not have the authority to compel CMS to make those payments. The determination to whether or not Parkview is entitled to the payments under the provider agreement requires a determination, possibly an adjudication of whether or not Parkview is a hospital. Congress specifically limited judicial review of such agency decisions, like this one[,] [i]n situations where the aggrieved party, Parkview here[,] has exhausted its administrative remedies. Parkview has not exhausted them. And I conclude, that I must deny its Motion to Compel. I do not find that . . . CMS violated the automatic stay. As I conclude, initially the CMS is not exercising any control over property of the estate. But even if it had done so, [§ 362(b)(4)], possibly [§ 362(b)(28)], provide protection.
>
> Finally, I do not find that [§ 525] was violated.

Appellant App. at 200-01.

On January 7, 2016, an Administrative Law Judge ("ALJ"), acting for the United States Department of Health and Human Services ("DHHS"), issued a decision on Parkview's administrative appeal of CMS' action with respect to the termination of the Provider Agreement. ECF No. 13 at 15; *see also* ECF No. 13 at 39-47 (text of ALJ decision). The ALJ concluded that "CMS' determination [of June 19,

---

property of the debtor's estate, because it was terminated by Parkview. *See* ECF No. 14 at 9, 31-32; Oral Arg. Hr'g, Apr. 26, 2016; *see also* Appellant App. at 96-97, ¶ 38.

2015] to impose a retroactive effective date for a voluntary termination based on Parkview's decision to cease providing inpatient services" and Parkview's consequent failure to meet a statutory requirement to be a hospital in the Medicare program, was "an involuntary termination of Parkview." *Id.* at 43. He stated, "a hospital that does not primarily engage in providing inpatient care may be involuntarily terminated." *Id.* (citing 42 U.S.C. §§ 1395cc(b)(2), 1395x; 42 C.F.R. § 489.53(a)). The ALJ also found that Parkview "permanently ceased to provide any inpatient services as of June 18, 2015[,]" and therefore CMS had a legitimate basis for involuntarily terminating the provider agreement. *Id.* at 44-45. The ALJ determined that the effective date of termination was July 4, and not June 18, as CMS had found, because 42 C.F.R. § 489.53(d)(1) requires that CMS give notice of an involuntary termination at least 15 days before the termination goes into effect. *Id.* at 45. In sum, the ALJ affirmed what he deemed to be an "involuntary termination" by CMS of Parkview's Provider Agreement but modified the effective date of termination to July 4, 2015. *Id.* at 47.

## II.  LEGAL ANALYSIS

On appeal of a Bankruptcy Court decision to the District Court pursuant to 28 U.S.C.A. § 158(a) (2016), the District Court reviews the Bankruptcy Court's conclusions of law *de novo. Beacon Invs. LLC v. MainePCS, LLC*, 468 B.R. 1, 14 (D. Me. 2012) (citation omitted); *see also In re Hill*, 562 F.3d 29, 32 (1st Cir. 2009) (citation omitted). "In accordance with Federal Rule of Bankruptcy Procedure 8013, the Bankruptcy Court's findings of fact will not be set aside unless clearly erroneous." *Beacon Invs. LLC*, 468 B.R. at 14 (internal quotation marks and citation omitted).

7

Parkview contends that the Bankruptcy Court erred by treating the question presented by the Motion to Compel as being whether Parkview is entitled to payments under the Provider Agreement and whether Parkview complied with the Provider Agreement and Medicare statutes. ECF No. 13 at 14, 16, 18. Instead, Parkview asserts, its Motion to Compel sought a determination of whether CMS violated provisions of the Bankruptcy Code, specifically, whether it unilaterally terminated an executory contract in violation of § 365(d)(2), and also violated the automatic stay provision of § 362(a)(3), and § 525(a)'s protection of debtors against discriminatory treatment. *Id.* at 12, 14; *see* 11 U.S.C.A. §§ 362(a)(3), 365(d)(2), 525(a).

For reasons I will explain, the Bankruptcy Court did not err in concluding that it lacked jurisdiction to decide whether CMS lawfully terminated the Provider Agreement under the Bankruptcy Code because the Secretary of Health and Human Services (the "Secretary") must first make a final determination through the administrative appeal process.

## A.     Exhaustion of Administrative Remedies Prior to Judicial Review

The District Court's jurisdiction to review the Secretary's decision of issues arising under the Medicare program is established in 42 U.S.C.A. § 405(g) (2016), which is made applicable to the Medicare Act by 42 U.S.C.A. § 1395ff(b)(1)(A). Section 405(g) states in part:

> (g) Judicial review
> Any individual, after any final decision of the [Secretary] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the [Secretary] may allow.

42 U.S.C.A. § 405(g); *see* 42 U.S.C.A. § 1395ff(b)(1)(A) ("[A]ny individual dissatisfied with any initial determination under subsection (a)(1) of this section shall be entitled to . . . judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.").  Section 405(h), incorporated into the Medicare Act by 42 U.S.C.A. § 1395ii, states in part:

> **(h) Finality of [Secretary's] decision**
> The findings and decision of the [Secretary] after a hearing shall be binding upon all individuals who were parties to such hearing.  No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided.  No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C.A. § 405(h); *see* 42 U.S.C.A. § 1395ii; *see also Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 346 (3d Cir. 2012).

Together, §§ 405(g) and (h) require the exhaustion of administrative remedies through the agency review process before judicial review takes place.  *See In re House of Mercy, Inc.*, 353 B.R. 867, 869 (Bankr. W.D. La. 2006) ("The Medicare statutory scheme limits judicial review of claims arising under the Act to those which have exhausted the administrative remedies including presentment of the claim to the Secretary and an exhaustion of the review/appeal procedures.") (citations omitted); *see also Heckler v. Ringer*, 466 U.S. 602, 605, 622 (1984); *In re Home Comp Care, Inc.*, 221 B.R. 202, 205 (N.D. Ill. 1998).

The last sentence of § 405(h), barring actions brought "to recover on any claim arising under" the Medicare Act, explicitly refers only to § 1331 (federal-question jurisdiction) and § 1346 (jurisdiction of cases with the United States as defendant) of

Title 28.  *See* 42 U.S.C.A. § 405(h).  The minority view has interpreted § 405(h) to not bar separate actions subject to the district courts' bankruptcy jurisdiction pursuant to 28 U.S.C.A. § 1334.  *See Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1141 n.11 (9th Cir. 2010) (citing *In re Town & Country Home Nursing Servs., Inc.*, 963 F.2d 1146, 1155 (9th Cir. 1991)).  However, the weight of authority holds that the jurisdictional bar of § 405(h) applies to other grants of jurisdiction under Title 28, including bankruptcy jurisdiction under § 1334.[6]  As the court in *In re Hosp. Staffing Servs., Inc.* explained:

> When originally enacted, the third sentence in § 405(h) specifically prohibited any action under "Section 24 of the Judicial Code of the United States."  Then Section 24—codified at 28 U.S.C. § 41—contained nearly all jurisdictional grants, including bankruptcy jurisdiction.  When the judicial code was revised in 1948, jurisdictional grants were placed in separate sections.  In 1984, the Legislature revised § 405(h), and replaced "Section 24" with "Section 1331 or 1346."  Upon amending, the Legislature stated "none of such amendments shall be construed as changing or affecting any right, liability or status or interpretation which existed."

---

[6] *See Nichole Med. Equip. & Supply, Inc.*, 694 F.3d at 346-47 (holding that § 405(h) "continues to bar virtually all grants of jurisdiction under Title 28," and specifically jurisdiction under § 1332); *Midland Psychiatric Assocs., Inc. v. United States*, 145 F.3d 1000, 1004 (8th Cir. 1998) (holding that § 405(h)'s jurisdictional bar extends to jurisdiction under § 1332); *Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 488-89 (7th Cir. 1990) (same), *cert. denied*, 111 S. Ct. 579 (1990); *In re Bayou Shores SNF, LLC*, 533 B.R. 337, 342 (M.D. Fla. 2015) ("[T]he majority of courts that have considered the omission of section 1334 (and other jurisdictional grants) from section 405(h) have examined Congress' intent when it enacted the jurisdictional bar and concluded that the omission of section 1334 and other jurisdictional grants (like section 1332) was inconsistent with that intent."), *appeal docketed*, No. 15-13731 (11th Cir. Aug. 20, 2015); *In re Hosp. Staffing Servs., Inc.*, 258 B.R. 53, 57-58 (S.D. Fla. 2000) (holding that § 405(h) applies to § 1334); *Excel Home Care, Inc. v. DHHS*, 316 B.R. 565, 572-74 (D. Mass. 2004) (same); *DHHS v. Noonan*, 1996 WL 728352, at *3 (D. Mass. Oct. 15, 1996) (citations omitted) (stating that "the Bankruptcy Code does not confer subject matter jurisdiction over matters directly 'arising under' the Medicare Act"); *In re St. Johns Home Health Agency, Inc.*, 173 B.R. 238, 244 (S.D. Fla. 1994) (concluding that § 405(h) precludes jurisdiction under § 1334 over a claim arising under the Medicare program); *In re St. Mary Hosp.*, 123 B.R. 14, 16-18 (E.D. Pa. 1991) (same).

*In re Hosp. Staffing Servs., Inc.*, 258 B.R. at 57 (citations and footnote omitted). "[T]he omission of 28 U.S.C. § 1334 from the amended version of 42 U.S.C. § 405(h) was not meant to create bankruptcy jurisdiction where it previously was precluded." *In re St. Johns Home Health Agency, Inc.*, 173 B.R. at 244; *see also Excel Home Care, Inc.*, 316 B.R. at 572-73 (adopting the analysis of the legislative history of § 405(h) of *In re St. Johns Home Health Agency, Inc.*).

As enacted by Congress, the law that amended § 405(h) was explicit as to its intended effect: "[N]one of such amendments shall be construed as changing or affecting any right, liability, status, or interpretation which existed" under the provision prior to its revision. Deficit Reduction Act of 1984, Pub. L. No. 98-369, § 2664(b), 98 Stat. 494, 1171-72 (1984). The literal reading of § 405(h) adopted by the minority view is contrary to this stated intent. Accordingly, § 405(h) should not be construed, as Parkview urges, to cede the Secretary's exclusive jurisdiction to determine questions arising under the Medicare Act to the District Court's bankruptcy jurisdiction where the claim involves a Medicare provider that is a debtor in bankruptcy. Thus, even after the 1984 amendments, the exercise of bankruptcy court jurisdiction under § 1334 for claims arising under the Medicare program is precluded by § 405(h). *In re St. Johns Home Health Agency, Inc.*, 173 B.R. at 244 (citations omitted).

Accordingly, pursuant to 42 U.S.C.A. §§ 405(g) and (h), all questions arising under the Medicare Act are to be adjudicated by the agency and finally decided by the Secretary prior to any judicial review. *See In re St. Mary Hosp.*, 123 B.R. at 17 ("[A] broad reading of section 405(h) puts its interpretation in accord with Congress'

intent to permit the Secretary in Medicare disputes to develop the record and base decisions upon his unique expertise in the health care field."). This regime of administrative review prior to judicial review under the Medicare Act applies regardless of whether a Medicare provider is in bankruptcy.

> The misfortune that a provider is in bankruptcy when he has a reimbursement dispute with the Secretary [of Health and Human Services] should not upset the careful balance between administrative and judicial review. There is no compelling reason to treat the bankrupt provider differently than any other provider.

*Id.*; *see also In re St. Johns Home Health Agency, Inc.*, 173 B.R. at 243 ("The filing of a bankruptcy petition does not and should not create a shortcut to judicial review of administrative decisions otherwise subject to exhaustion requirements."); *cf. In re Hodges*, 364 B.R. 304, 306 (Bankr. N.D. Ill. 2007) ("the § 405(h) limitation includes 28 U.S.C. § 1334; until the debtor exhausts her administrative remedies this Court lacks subject matter jurisdiction over the claim regarding the [Social Security Administration's] assertion that the debtor has received an overpayment of benefits.").

## B. Parkview's Motion to Compel Presents a Claim "Arising Under" the Medicare Act

Contrary to Parkview's argument, its Motion to Compel presents a claim "arising under" the Medicare Act, 42 U.S.C.A. §§ 405(h), 1395ii. At issue are the effectiveness and date of the termination of Parkview's Provider Agreement. Although Parkview contends that the question before the Bankruptcy Court was whether CMS complied with §§ 362, 365, and 525 of the Bankruptcy Code and that it is not asking for a determination of the underlying reimbursement matter, *see* ECF

12

No. 13 at 16, the Motion to Compel squarely presents a Medicare dispute because it rests on whether the Provider Agreement was terminated voluntarily or involuntarily under the Medicare statute and regulations.[7]

As the First Circuit has recognized, "the Supreme Court has interpreted broadly the section 405(h) bar, holding that a claim 'arises under' the Social Security or Medicare Act if 'the standing and the substantive basis' for the claim derive from that statute." *Puerto Rican Ass'n of Physical Med. and Rehab., Inc. v. United States*, 521 F.3d 46, 48 (1st Cir. 2008) (citing *Weinberger v. Salfi*, 422 U.S. 749, 760-61 (1975); *Ringer*, 466 U.S. at 615); *see also Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13-14 (2000) (stating that § 405(h) "demands the 'channeling' of virtually all legal attacks through the agency" and recognizing that "claims of program eligibility" are claims arising under the Medicare Act). In *Puerto Rican Ass'n of Physical Med. and Rehab., Inc.*, the First Circuit held that a challenge to a regulation restricting Medicare reimbursement for physical therapy services was a claim requiring exhaustion of administrative remedies through the agency appeals process prior to

---

[7]  Parkview asserts that with its June 15 Notification Letter, it was only providing notice of intent to terminate Part A inpatient services as required and that the letter stated that the termination was effective upon an order of the Bankruptcy Court to be entered within 60-90 days.  ECF No. 13 at 10-11, 26 n.12; *see* Appellant App. at 110.  Parkview requested in its Motion to Compel that the Bankruptcy Court issue an order:

> (a) Determining that the Termination Notice is null and void and that the Provider Agreement remains in full force and effect;

> (b) Until assumed or rejected, requiring CMS to honor the terms of the Provider Agreement and reimburse the Debtor for Part B Services provided by the Debtor from and after June 18, 2015, in accordance with the terms of the Provider Agreement[.]

Appellant App. at 56.  CMS argues that with its June 19 Termination Letter, it accepted Parkview's voluntary termination of the Provider Agreement.  ECF No. 14 at 11-13; *see* Appellant App. at 112.

judicial review.  *See Puerto Rican Ass'n of Physical Med. and Rehab., Inc.*, 521 F.3d at 47, 48, 50.

Accordingly, it is for the Secretary to decide administratively whether, how, and when Parkview's Provider Agreement with CMS was terminated.[8]  These are not Bankruptcy Code questions.  They require application of the Medicare program laws and regulations governing how a provider and CMS may terminate a provider agreement, including the requirements for notice of intent to terminate or of involuntary termination, the effective date of termination, and the standards that govern provider eligibility.  *See* 42 U.S.C.A. §§ 1395cc(b)(1)-(2), 1395x(e)(1); 42 C.F.R. §§ 482.1, 489.52, 489.53.

Finally, I address Parkview's reliance on *In re Slater Health Ctr., Inc.* (*Slater*), 398 F.3d 98 (1st Cir. 2005), as a foundation for its argument that there is no bar to the Bankruptcy Court's jurisdiction.  ECF No. 13 at 18-19.  In *Slater*, the First Circuit addressed the issue of whether the Government's adjustment for prior Medicare overpayments to a nursing home in Chapter 11 bankruptcy was a setoff, which would not be permitted under the Bankruptcy Code, 11 U.S.C.A. § 362(a)(7), or a recoupment, which would not be affected by the bankruptcy.  *Slater*, 398 F.3d at 99-

---

[8] To the extent Parkview argues that the ALJ has already made the necessary agency determinations under Medicare law and regulations, and the Bankruptcy Court may now proceed with its consideration of the relevant questions under the Bankruptcy Code, i.e., interpret as a matter of bankruptcy law whether what the ALJ determined to be an involuntary termination under the Medicare program was an impermissible unilateral termination of an executory contract of a debtor without court approval, *see* ECF No. 15 at 6 n.4, 8, 9; Oral Arg. Hr'g, Apr. 26, 2016, Parkview still cannot prevail in this appeal because there has not been a final agency determination as the agency review process has not been exhausted.  Parkview stated in a footnote in its brief that it "expects that it will, again, prophylactically appeal the ALJ Decision" with respect to its conclusion that CMS could have effected an involuntary termination effective as of July 4, 2015, "because CMS did not have the right to involuntarily terminate the Provider Agreement at all absent approval of the Bankruptcy Court."  ECF No. 13 at 15 n.4.

100, 103.  The First Circuit affirmed the district court's decision that the adjustment was a recoupment.  *Id.* at 105.  The First Circuit noted that the district court provided an alternative analysis—that the overpayments were funds to which the provider had no claim at all—but stated that it would not address it and affirmed on the basis that the adjustment was a recoupment and not a setoff.  *Id.* at 102 & n.3, 105.  *Slater* did not address whether the lawfulness of the termination of a provider agreement is a question within the exclusive jurisdiction of the Bankruptcy Court, and it is not analogous to this case because there was no substantive Medicare issue in dispute and the provider had exhausted its administrative remedies.[9]

The core question presented by Parkview's Motion to Compel—whether its Provider Agreement was lawfully terminated by CMS—requires Parkview to exhaust its administrative remedies.  Until that has occurred, the Bankruptcy Court does not have jurisdiction to decide whether the Provider Agreement was lawfully terminated and, therefore, whether the Provider Agreement should be reinstated.  Accordingly, I affirm the Bankruptcy Court's conclusion that it lacked jurisdiction to adjudicate those issues and whether CMS violated § 365's provisions regarding executory contracts.  For the same reasons, I also conclude that the Bankruptcy Court did not err in finding that CMS' actions did not violate § 362's automatic stay or § 525's protection of debtors against discriminatory treatment.

---

[9]  The district court decision reviewed in *Slater* noted that "[i]n any event, [the provider] did pursue the matter administratively" and the agency dismissed the appeal on the ground that it lacked jurisdiction because the provider "did not question the overpayments" but "rather, disputed Medicare's right, under the Bankruptcy Code, to recoup the overpayments."  *See In re Slater Health Ctr., Inc.*, 306 B.R. 20, 24 (D. R.I. 2004).

It is **ORDERED** that the Bankruptcy Court's decision denying Parkview's Motion to Compel is **AFFIRMED**.

**SO ORDERED.**

Dated this 25th day of May, 2016.

_____/s/ Jon D. Levy_____
**U.S. DISTRICT JUDGE**